Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5811 | **DATE** | 6/25/2004 |
| **CASE TITLE** | WILLIE C. MURRAY, et al vs. AMERICA'S MORTGAGE BANC, INC., etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: HFN's motion to dismiss is granted in part as to Count III and denied in part as to Counts I and II [doc. no. 9-1], AMB's motion to dismiss is denied [26-1], and Paragon's motion to dismiss is granted [28-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 9 2004 | |
| | Notified counsel by telephone. | | date docketed | 13 |
| ✓ | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CG | courtroom deputy's initials | 2004 JUN 25 PM 4:00 U.S. DISTRICT COURT CLERK | | |
| | | TC Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIE C. MURRY and <br> WYLODEAN MURRY, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICA'S MORTGAGE BANC, INC.; <br> THE LOAN ARRANGER, INC.; <br> CLEARWATER TITLE COMPANY; <br> PARAGON HOME LENDING, LLC; <br> HOMECOMINGS FINANCIAL <br> NETWORK, INC., MICHAEL ROBINS; <br> and JOHN DOES 1-5, <br><br> Defendants. | 03 C 5811 <br><br> Judge Ronald A. Guzmán |

**DOCKETED**
**JUN 29 2004**

## MEMORANDUM OPINION AND ORDER

Defendants Homecomings Financial Network ("HFN"), America's Mortgage Banc, Inc. ("AMB"), and Paragon Home Lending, LLC ("Paragon") move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, the Court grants Paragon's motion, grants in part and denies in part HFN's motion, and denies AMB's motion.

## BACKGROUND

On some date before April 3, 2002, the Murrys hired The Loan Arranger, Inc. ("Loan Arranger") as their mortgage broker to find financing for them. (Second Am. Compl. ¶ 14.) Loan Arranger arranged for a mortgage loan with AMB in the principal amount of $74,000, to be secured by their primary residence. (*Id.* ¶ 15.) On April 3, 2002, the loan was closed and assigned to Paragon. (*Id.* ¶¶ 16, 28.) The Murrys were directed to pay, and have been paying,

HFN, who has been servicing the loan for AMB. (*Id.* ¶¶ 10, 29.) In consummating this transaction, the Murrys signed or received a note, various disclosure forms, and a Truth in Lending disclosure statement. (*Id.* ¶ 17.) That statement listed charges in connection with the loan, among them charges for title insurance in the amount of $1,595--$450 to Lakeshore Title Agency and $1,145 to Clearwater Title Co. (*Id.* ¶¶ 18-20.)

The amount paid to Clearwater Title is the root from which this complaint arises, for the Murrys allege that this payment was actually an "indirect broker fee," being paid to Loan Arranger, who owns Clearwater Title. (*Id.* ¶¶ 26-27.) Loan Arranger and Clearwater Title allegedly conspired to overcharge their customers under the guise of title insurance without having to disclose the amount of the finance charge to consumers under the Truth in Lending Act ("TILA"). (*Id.*) As a broker fee, Plaintiffs allege, the $1,145 should have been included in the finance charge amount. (*Id.* ¶ 27.) As a result of the exclusion of the Clearwater Title charge from the disclosed finance charge, the disclosed finance charge on the Murrys' transaction is understated, and the amount financed is allegedly overstated by $1,145, an amount in excess of 0.5% of the total amount of credit extended. The Murrys are now before this Court, on behalf of themselves and a putative class of similarly situated individuals, asking for rescission of the mortgage loans pursuant to 15 U.S.C. § 1641, and statutory damages under 15 U.S.C. § 1635(g).

## DISCUSSION

On a motion to dismiss, all well-pleaded factual allegations are presumed to be true. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.* 892 F.2d 583, 586 (7th Cir. 1989). In considering a motion to dismiss, the court

2

must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). Therefore, a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

HFN, AMB, and Paragon move to dismiss Plaintiffs' complaint on three independent grounds. Initially, Defendants aver that TILA, 15 U.S.C. § 1601 *et seq.*, in conjunction with 12 C.F.R. § 226.4 ("Regulation Z"), do not mandate that charges in connection with title insurance be included in the total dollar amount of a finance charge. As such, according to Defendants, the Murrys' request for rescission is barred by the three-day time limit imposed by TILA, and any other claim is barred by the one-year statute of limitations. Secondly, Defendant HFN alleges that it is not a necessary party to this litigation under Rule 19. Finally, Defendants aver that the Murrys fail to state a claim for which relief can be granted under the Illinois Consumer Fraud and Deceptive Practices Act.

I. **Counts I & II: TILA Claims**

Initially, the Court notes that TILA "must be liberally construed in favor of the consumer." *Leathers v. Peoria Toyota-Volvo*, 824 F. Supp. 155, 157 (N.D. Ill. 1993) (quotations omitted). Congress enacted TILA to ensure a "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (2004); *see Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363-68 (1973) (discussing purpose and history of TILA).

3

Congress was particularly concerned about the practice engaged in by many lenders of advertising low credit rates to attract customers but then burying the cost of those lower credit rates by increasing the price of goods sold. *Mourning,* 411 U.S. at 365. Here, the Murrys claim that Defendants did just that by advertising low credit rates but then later recouped the cost of those rates by falsely charging more for title insurance.

A.   **Accuracy of Finance Charge**

To preclude lenders from engaging in the type of scheme alleged by the Plaintiffs, TILA requires that before a creditor may enter a transaction with a consumer, he must disclose to the consumer the method by which the creditor determines the principal balance on the loan, the amount of the finance charge imposed on the loan, the applicable financing rates, and any other charges which may be imposed in addition to the finance charge. 15 U.S.C. § 1637. In credit transactions such as the one here, where a security interest is retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest will be subject to the security interest has until midnight of the third business day following his receipt of all necessary disclosures, as required by TILA, to rescind the transaction. 12 C.F.R. § 226.23. This includes an accurate statement of the finance charge. *Id.*; 12 C.F.R. § 226.32. If the creditor does not fully comply with TILA, *i.e.*, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, upon sale of the property, whichever occurs first." *See* 12 C.F.R. § 226.23(a)(3).

The question thus becomes whether the Defendants have violated TILA by failing to disclose finance charges, as they are required to do under 15 U.S.C. § 1637. In order to answer

4

this question, the Court must first consider what constitutes a finance charge for purposes of TILA.

TILA defines the term "finance charge" as "the sum of all charges, payable directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). The finance charge does not include fees and amounts imposed by third-party closing agents, such as settlement agents, attorneys, and escrows and title companies "if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." *Id.*; *see also* 12 C.F.R. § 226.4(c)(7)(i). According to TILA, where the "extension of credit [is] secured by an interest in real property . . . [f]ees or premiums for title examination, title insurance, or similar purposes" "shall not be included in the computation of the finance charge." 15 U.S.C. § 1605(e). TILA does, however, include broker fees, finder's fees, or similar charges paid to a third party for arranging or participating in a credit transaction, as items that must be included in the total dollar amount of a finance charge. 15 U.S.C. § 1605(a).

All three movants argue that because TILA expressly excludes charges for title insurance from the calculation of a finance charge, the Murrys have failed to state a claim under TILA. The Court disagrees. In their complaint, the Murrys aver that Clearwater Title and the Loan Arranger are companies owned and managed by the same individual. (Second Am. Compl. ¶¶ 5-8.) They contend that the TILA disclosure statement, tendered to Plaintiffs by AMB, listed a $1,145 charge for a second title insurance policy that was duplicative, excessive, and unnecessary. (*Id.* ¶¶ 25-27.) It is also alleged, on information and belief, that the policy was actually issued by or reinsured with one of the major title companies. (*Id.* ¶ 24.) The Murrys contend further that said amount was a hidden finance charge, the sole purpose of which was to place that amount in the hands of Loan Arranger without having to list it in the finance charge.

5

(*Id.* ¶¶ 26.) In essence, the Murrys contend that Loan Arranger and AMB simply listed the $1,145 as a charge for title insurance to lower the stated finance charge.

From the facts alleged here, it is unclear whether the amount paid to Clearwater Title was for a bona fide title insurance policy or just a hidden broker's fee intended for Loan Arranger. Specifically, because Clearwater Title and Loan Arranger are under common ownership, if the amount paid to Clearwater Title was not for a title insurance policy at all, it was a broker's fee. If proven true, these facts would show that Plaintiffs were not given complete disclosure of the terms of their mortgage loan and would be entitled to rescission under TILA. What's more, because the Murrys were never presented with a TILA disclosure statement that complied with TILA, they would have up to three years to seek rescission and not three days, as the movants suggest. *See* 12 C.F.R. § 226.23. As such, the Plaintiffs have presented a set of facts under which relief could be granted under TILA.

### B.  Assignee Liability under TILA

"Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). TILA's rescission provision effectively abrogates the holder in due course rule, making any assignee subject to all claims or defenses that the consumer could assert against the creditor unless the assignee demonstrates, by a preponderance of the evidence, "that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed." 15 U.S.C. § 1641(d)(1); *see also Mount v. LaSalle Bank Lake View*, 926 F. Supp. 759, 763-64 (N.D. Ill. 1996). If the debtor wishes to maintain an action against an assignee for rescission, however, the TILA violation

must be "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). A violation is apparent on the face of a disclosure statement where the disclosure "can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned" or a disclosure "does not use the terms required" by TILA. *Id.* The Murrys do not allege that the TILA disclosure here did not use the proper terms, thus we must examine whether a violation could have been determined from the face of the disclosure statement.

An assignee reviewing a TILA statement has a duty to inspect the document for irregularities solely on the face of the document. *See Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998). This is a reasonable person standard, which imposes no duty of inquiry on the assignee. *Id.* For example, if the terms of the document were manifestly illegal, impossible, or conflicted with other terms, the assignee would have some grounds to believe that there is a TILA violation. Yet even still, there is no duty to look beyond the four corners of the document to ascertain compliance with TILA. *See id.*; *see also Balderos v. City Chevrolet*, 214 F.3d 849, 853 (7th Cir. 2000) (holding that knowledge that is apparent only by virtue of special knowledge is not apparent on the face of a document itself).

As pleaded here, the Murrys have failed to state a claim against Paragon upon which relief may be granted. The Murrys allege that the TILA disclosure statements provided to them, and in turn provided to Paragon, contain two charges for title insurance: a charge of $450 to Lakeshore Title and a charge of $1,145 to Clearwater Title. (Second Am. Compl. ¶ 20.) This information alone does not sufficiently indicate a TILA violation. *See Taylor*, 150 F.3d at 694. Under TILA, Paragon had no duty to investigate the propriety of Clearwater Title's price, let alone whether or not it actually performed the services charged for. *See id.*; *see also Balderos*,

214 F.3d at 853. Thus, it is irrelevant that Chicago Title, a much larger title company,

base rate of $473.80 for the same coverage. (Second Am. Compl. ¶ 22.)

The Murrys' reliance on 15 U.S.C. § 1641(c) is misguided and does not save their complaint against Paragon. Under TILA, Congress created a private enforcement scheme whereby consumers could act as private attorneys general. *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir. 1982). An essential part of this plan was to allow those successful plaintiffs to recover attorney's fees and other expenses from both originating creditors and assignees. *See Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910, 916-17 (N.D. Ill. 2002). By doing so, Congress ensured that consumers, who are in the best position to discover TILA violations, would have the necessary economic incentive to pursue claims against their creditors. In construing a statute, however, a court must read it as and integrated whole so as to give meaning to all its terms. *Id.* at 916 (citing *In Re McFarland*, 84 F.3d 943, 946-47 (7th Cir. 1996)). Allowing a claim for damages to proceed against Paragon here is simply inconsistent with this principle, thus its motion to dismiss is granted.

### C. HFN as a Necessary Party Under Rule 19

The purpose of Rule 19 is to "permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). "The general policy of Rule 19, as with the Federal Rules of Civil Procedure in general, is 'the impulse . . . toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Mayer Paving & Asphalt Co. v. Gen. Dynamics Corp.*, 486 F.2d 763, 771 (7th Cir. 1973) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

8

724 (1966)). Indeed, it is well established that "'in an action to set aside . . . a contract, all parties who may be affected by the determination of the action are indispensable.'" *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 480 (7th Cir. 1996) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)).

Any application of Rule 19 "turns on the facts of each case, and the court must employ pragmatic considerations when making its determination." *Hashop v. Fed. Home Loan Mortgage Corp.*, 171 F.R.D. 208, 211 (N.D. Ill. 1997). In determining whether a party is necessary to the litigation under Rule 19, we must consider the alleged necessary party's ability to protect its interest without being joined to the current action. *Id.* A party also should be joined if, in its absence, it will be prejudiced or the already existing parties will be subjected to multiple or inconsistent obligations. *Id.* Establishing only one of these criteria is necessary to establish that the absent party should be joined if feasible. *Id.* In addition, the term "complete relief" refers only to relief between persons already parties, and not as between a party and the absent person whose joinder is sought." *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992).

In this instance, HFN is the kind of party that should be retained for Rule 19 purposes. The Murrys seek rescission of the mortgage loan that HFN is servicing--the loan upon which, prior to the commencement of this action, it has collected payments and made adverse credit reports to credit bureaus. (Second Am. Compl. ¶ 10.) In their complaint, the Murrys allege that HFN claims a right to payment on account of this loan. (*Id.* ¶ 29.) Based on the facts alleged, if the original loan is rescinded, HFN will cease to have any interest in this loan. In the interest of judicial economy, and in keeping with the purpose of Rule 19, the Court may address the rights and interests of all the litigants regarding the loan at issue. Moreover, the Murrys may wish to recover late fees or other penalties assessed and collected by HFN. HFN may wish to renew

9

their objection in a motion for summary judgment, however, at this stage in the litigation, dismissal is inappropriate. HFN's motion to dismiss Count I is therefore denied without prejudice.

## II. Count III: Illinois Consumer Fraud and Deceptive Practices Act

In Count III, the Murrys allege that AMB and Paragon violated the Illinois Consumer Fraud and Deceptive Practices Act ("Illinois Consumer Fraud Act"), 815 ILL. COMP. STAT. 505/2. HFN is joined here as a Rule 19 necessary party. Initially, the Court notes that because all federal claims against Paragon have been dismissed, it declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against it. *See* 28 U.S.C. § 1367(c)(3).

### A. Failure to Plead with Particularity

Defendants HFN and AMB contend that Count III should be dismissed because it does not satisfy the heightened pleading standard for fraud under Rule 9(b). A plaintiff must plead a violation of the Illinois Consumer Fraud Act with the heightened specificity required by Rule 9(b). *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996). Rule 9(b) requires that "[i]n all averments of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). This is, in essence, the "who, what, when, where, and how: the first paragraph of every newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). At this stage, Rule 9(b) only requires that the plaintiff identify the alleged misrepresentation, not actually prove that the statement was false. *See Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992).

Plaintiffs' Second Amended Complaint meets this standard – it alleges that AMB and Loan Arranger, the who, through the TILA disclosure provided at the time the loan closed, the when, where and how, did not treat the $1,145 charge by Clearwater Title as a finance charge, the what of the fraud allegation. (Second Am. Compl. ¶¶ 14-20.) On information and belief, they further allege that this insurance policy was either issued by or reinsured with one of the major title companies. (*Id.* ¶ 24.) The alleged purpose of treating the Clearwater Title charge was to disguise a finance charge. (*Id.* ¶ 25.) The Court therefore denies AMB and HFN's motions as to this ground.

**B. Failure to State a Claim**

In order to state a claim for a violation of the Illinois Consumer Fraud Act, one must show that: (1) the defendant engaged in a deceptive act or practice, (2) the defendant intended that the plaintiff rely on that deception, (3) the deception occurred in the course of conduct involving trade or commerce, and (4) the act proximately caused damage to the plaintiff. *Jenkins v. Mercantile Mortgage Co.*, 231 F. Supp. 2d 737, 747 (N.D. Ill. 2002). Showing a plaintiff's actual reliance is not an element of statutory consumer fraud under the Act, but a valid claim must still show that the consumer fraud proximately caused her injury. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1128 (N.D. Ill. 1995). Omissions or concealment of material facts in the conduct of trade or commerce constitutes consumer fraud. 815 ILL. COMP. STAT. 505/2. A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase. *Mackinac v. Arcadia Nat'l Life Ins. Co.*, 648 N.E.2d 237, 239 (Ill. App. Ct. 1995).

11

The *sine qua non* of an allegation of a violation of the Illinois Consumer Fraud Act, however, is that the defendant actually participated in the scheme to defraud the plaintiff. *Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 471 (Ill. 2001); *see also Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 859 (Ill. 1998). Emphasizing the requirement of actual participation, the Illinois Supreme Court has held that the Illinois Consumer Fraud Act does not even "provide a cause of action against those who knowingly receive the benefits from the person committing a violation of the Act." *Jackson*, 755 N.E.2d at 471.

AMB and HFN each contend the Murrys have failed to state a claim upon which relief can be granted because the Murrys have not alleged each actually participated in the scheme. With regard to AMB, the Murrys' allegations sufficiently put it on notice of the fraud claims against it. They allege that AMB's providing them a TILA disclosure statement, in which the title insurance charge to Clearwater was not labeled as a finance charge in order to put that sum of money in the hands of the mortgage broker, constitutes an omission of material fact. They also allege that AMB's conduct caused them to pay unnecessary and duplicative title insurance charges. With regard to HFN, however, the Murrys fail to state a claim. The Illinois Supreme Court's rulings in *Zekman v. Direct American Marketers, Inc.* and *Jackson v. South Holland Dodge, Inc.* clearly hold that without actual participation, no one who stands down the line in receiving the benefits of a fraudulent transaction can be held liable under the Illinois Consumer Fraud Act. *Id.*; 695 N.E.2d at 859. Hence, there is no set of facts under which HFN, a loan servicer, could be held liable for a mortgage broker or lender's fraudulent acts in violation of the Act. Accordingly, this Court denies AMB's motion to dismiss Count III and grants HFN's motion to dismiss Count III.

## CONCLUSION

For the foregoing reasons, HFN's motion to dismiss is granted in part as to Count III and denied in part as to Counts I and II [doc. no. 9-1], AMB's motion to dismiss is denied [26-1], and Paragon's motion to dismiss is granted [28-1].

**SO ORDERED**  ENTERED: 6/25/04

HON. RONALD A. GUZMAN
**United States Judge**